## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRUSTYBELL, GMBH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BLUENOTARY, LLC | ) |
| | ) |
| Defendants | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Trustybell, GmbH ("Trustybell") files this Complaint against Defendant BlueNotary, LLC ("BlueNotary," "Defendant BlueNotary," or "Defendant") and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. Trustybell seeks damages and injunctive relief arising from BlueNotary's unauthorized use, sale, offer for sale, and importation of products and services that infringe one or more claims of U.S. Patent No. 11,582,274 (the '274 Patent, attached as **Exhibit A**), owned by Trustybell. Trustybell asserts the '274 Patent against Defendant BlueNotary for, *inter alia*, the unauthorized practicing of the subject matter of the claims of the '274 Patent.

2. Despite receiving written notice of infringement on two occasions—once on April 22, 2025, and again on May 22, 2025—Defendant BlueNotary has failed to respond or cease its infringing conduct, rendering its actions willful and deliberate.

## PARTIES

3. Plaintiff Trustybell is a limited liability company organized and existing under the laws of Germany with its corporate headquarters at Würmstrasse 55, D-82166 Gräfelfing, Germany

23746. Plaintiff Trustybell offers its Trustybell App to consumers around the globe, including those in the U.S.. This App provides technologies that allow consumers to validate participant identities prior to connecting virtual participants in remote online notary ("RON") sessions. Plaintiff Trustybell has secured patent protection for its innovative technologies, including the '274 patent.

4. On information and belief, Defendant BlueNotary is a limited liability company organized and existing under the laws of Illinois and Wyoming, with its principal place of business at 1 East Erie Street, Chicago, IL 60611.

5. BlueNotary operates in the same industry as Trustybell and uses Trustybell's proprietary innovations without proper credit, permission, or license. Namely, BlueNotary uses the innovative methods disclosed and claimed in Trustybell's '274 Patent to validate participant identities prior to connecting virtual participants in remote online notary ("RON") sessions. BlueNotary does so without a proper license, authorization or permission to use Trustybell's patented technology.

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, Title 35 U.S.C. §§ 1, et seq. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) as this is a civil action arising under the patent laws of the United States.

7. This Court has personal jurisdiction over Defendant, BlueNotary, at least because BlueNotary is incorporated in the State of Illinois.

8. This Court has personal jurisdiction over Defendant, BlueNotary, at least because BlueNotary maintains a regular, established, and principal place of business in this District and has committed acts of infringement in this District.

2

9.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) at least because BlueNotary is incorporated in the state of Illinois and BlueNotary's principal place of business is in this District.

## FACTUAL BACKGROUND

### Plaintiff Trustybell

10.  In 2020, during the COVID-19 pandemic, Constantin Bunger and his partners decided to form a company designed to facilitate remote identity authentication in an innovative way. As the videoconferencing boom ensued, the market still lacked a secure and reliable way to authenticate the identity of individuals on videoconference calls.  There was a particular need for such authentication in cases where, pre-pandemic, the nature of the work or transaction required in-person authorization. For example, certain banking transactions, government-facing transactions, real-estate transactions, and transactions requiring a notary typically require in-person authorization.

11.  Based on needs in the market dictated by pandemic quarantines, remote work mandates, and mandatory travel and movement restrictions, Mr. Bunger and his partners wanted to facilitate remote identity authentication in a reliable way.  They formed a company, named the company Trustybell, and incorporated it in Germany with a vision to promote their remote authentication technology globally.

12.  The Trustybell team worked diligently on the technology and software necessary to make their vision a reality and usher in a new era in remote personal identification and authorization.

13.  Upon development of their innovative product and service, Trustybell received strong interest from banks, local municipalities, and city governments who saw the need for Trustybell's offering.

14.     Trustybell also received significant interest from the German State Department for the service to remotely identify individuals in various parts of the world.  The German State Department requested a rollout of Trustybell's services in their largest embassies including Europe, the U.S., Australia, and Canada.

15.     With this interest in Germany first confirming the market need for Trustybell's technology and services, Trustybell expanded its offerings to other large European countries, such as France.  It then expanded its focus to the U.S. where Trustybell has engaged in discussions with large U.S. technology companies, and those discussions continue to this day.

**Trustybell's '274 Patent**

16.     Based on Trustybell's vision, the Trustybell team developed technology that would lead to a more modern and secure way to communicate virtually. It achieved this by confirming that a person engaged in a conversation is, in fact, who they claimed to be. Through Trustybell's innovative efforts, the founders were able to invent and patent a videoconferencing system that revolutionized the way people could verify a participant's identity and authenticate themselves while communicating remotely. Trustybell filed the priority patent for its innovation on November 10, 2020, in Europe, and the patent published as European Patent Application No. 20206720.3 on May 12, 2022. Intent on protecting and sharing their technology with the greater public, Trustybell filed their patent in the U.S. as well.

17. On February 14th, 2023, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '274 Patent entitled "Videoconferencing System."

4

18. Trustybell is the owner by assignment of the '274 Patent and possesses all substantial rights, title, and interest in the '274 Patent and thus holds the right to sue for infringement of the '274 Patent, including past infringement.

19.     To this day, Trustybell remains an international company focused on providing security and safety via authentication for participants in virtual communications. To provide its technology to consumers and customers at large, Trustybell developed and is the owner of the Trustybell Application (the "Trustybell App").

20. The Trustybell App helps participants in virtual communications verify the people they are communicating with. This includes verifying the participants' identities with biometric comparisons to photo IDs, the participants' locations, and any documents exchanged during the communications.

21. Prior to the Trustybell App, virtual communications such as videoconferencing and phone calls remained insecure due to the lack of verification and security measures in place. Participants were forced to rely on their own senses to determine whether another participant was who they claimed to be.

22. The Trustybell technology (e.g., Trustybell App) revolutionized virtual communications by providing the necessary security, authentication, and verification procedures to handle matters without the need for physical presence. Again, this proved to be crucial during the COVID-19 pandemic, and this need for remote authentication and verification continues today.





**Defendant BlueNotary**

23. BlueNotary is an online document fulfillment platform. One of BlueNotary's services is remote online notarization ("RON"). Upon information and belief, BlueNotary was organized and began providing its RON services in 2023, three years after the priority date of Trustybell's patent. BlueNotary's RON services use Trustybell's patented technology without Trustybell's permission.

24. Trustybell learned of BlueNotary's infringing conduct in early 2025. As a result, counsel for Trustybell sent a letter to BlueNotary's CEO, Mr. Andrew Ayer ("Andy Blue") on April 22, 2025, informing him of the '274 Patent. In the letter, Trustybell invited BlueNotary to collaborate and form a business arrangement based on the '274 Patent and enclosed a copy of the patent. Trustybell's invitation was met with silence. A true and accurate copy of the April 22, 2025, letter is attached as Exhibit B.

25. In a further attempt to reach a business resolution outside of court, Trustybell's counsel sent a follow up letter to BlueNotary's CEO, Andy Blue, on May 22, 2025, requesting that

BlueNotary coordinate a meeting with Trustybell to resolve the issue. Trustybell also indicated that it would be willing to take legal action to protect its valuable and infringed assets should BlueNotary continue to use the technology in the '274 Patent without permission. Once again, BlueNotary ignored Trustybell's efforts to negotiate and Trustybell's efforts were met with silence once again. A true and accurate copy of the May 22, 2025, letter is attached as Exhibit C.

26. Upon information and belief, BlueNotary retains a group of notaries for its RON service to provide online notary services via videoconference using Trustybell's patent technology.

27. BlueNotary's RON and associated services directly infringe at least claims 1, 2, 4, 6-9, and 11 of the '274 Patent.

28. Upon information and belief, prior to connecting a participant with a notary, BlueNotary performs a verification process that includes verifying a participant's identity via a biometric comparison with the participant's valid photo ID. More specifically, BlueNotary captures a photo of the participant's photo ID, then captures a photo of the participant to compare the image on the photo ID to the image of the participant. Based on this comparison and prior to connecting the participant with the notary, BlueNotary sends a signal to the notary indicating the results of the comparison of the two photos. This is the exact method disclosed and claimed by the '274 Patent and performed by the Trustybell Application.



**COUNT I**

**BlueNotary's Infringement of the '274 Patent**

29.     Trustybell realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

30. The '274 patent is valid and enforceable. Trustybell filed the application which became the '274 patent on November 9, 2021. After a brief prosecution with only one office action, the United States Patent Office granted a notice of allowance just over a year later on December 15, 2022, and published the '274 patent on February 14, 2023. The combination of elements described and claimed in the '274 patent was unknown in the prior art and provided significant advantages over existing systems.

31. Upon information and belief, BlueNotary has infringed, and continues to infringe, at least claims 1-2, 4, 6-9, and 11 of the '274 patent in violation of at least 35 U.S.C. § 271 by making, using,

offering for sale, selling, and/or importing into the United States, via its RON and associated services, a system that embodies the identity verification method as claimed in the '274 patent.

32. BlueNotary's services directly infringe one or more claims of the '274 Patent, including, by way of example and without limitation, claims 1, 2, 4, 6-9, and 11.

33. Claim charts mapping the elements of exemplary, asserted claims to the functionality of BlueNotary's accused product is attached as **Exhibit D**.

34. Regarding infringement of the claims of the '274 patent, including, but not limited to claim 1, upon information and belief, BlueNotary provides a platform to conduct a video call between a notary and at least one participant. For example, BlueNotary allows a participant to connect to a notary via a "video/audio session."



**How does online notarization work?**

Upload a document to our secure servers, follow the prompt for our ID analysis and robust identity authentication process. Finally, meet with the commissioned notary public in a live video meeting to review, sign, and complete the notarization process for your documents. This includes the notary signing and attaching his or her seal to the document. After the 10 minute process is completed, your document will be available for download.

To start an on-demand online notarization session, simply enter your email on https://bluenotary.us.

35. Upon information and belief, BlueNotary verifies the identity of the participant. For example, BlueNotary uses an authentication system "to ensure every signer is legit."



# What is the identity verification process?

BlueNotary utilizes two-point identification processes which incorporates knowledge-based identification or biometrics scanning with live credential evaluation. Biometric forensic analysis performs facial scans in tandem with ID scanning. Knowledge-based identification (KBA) uses a series of 5 personal questions to verify the signer's identity, and credential verification uses visual and electronic analysis of the signer's physical ID to confirm their identity.

36. Upon information and belief, BlueNotary sends information verifying the identity of the participant to the notary before and during the video call. For example, prior to joining a call, a notary can see the participant's name and address as well as the "type of credentials provided." This can also include the status of the verification process. Further, upon information and belief, BlueNotary allows a notary to access this information and the participant's photo ID during the call.













37. Upon information and belief, BlueNotary captures an image of the participant to verify the participant's identity. For example, BlueNotary uses "biometric scanning" to "check the liveness [of the participant] by taking various 'selfie' angles via video."





38. Upon information and belief, BlueNotary captures an image of the participant's photo ID to verify the identity of the participant. For example, BlueNotary partners with Persona (a third party entity) to take a picture of the participant's photo ID to identify the participant based on the image in the photo ID and the data present on the photo ID.









39. Upon information and belief, BlueNotary captures the images of the participant and the participant's photo ID immediately before connecting the participant to the notary. For example, BlueNotary describes its second step as verifying the participant's identity and the third step as meeting the notary.







40. Upon information and belief, BlueNotary verifies the identity at least by comparing the first image with the face image included on the second image, by means of technical image analysis. For example, BlueNotary "[a]utomatically compares the ID portrait to a previously captured selfie."







41. Upon information and belief, BlueNotary generates a signal to send to the notary that includes information regarding the participant's verified identity based on information extracted from the participant's photo ID. For example, BlueNotary partners with Persona to perform its biometric and ID analyses, where Persona will "[a]utomatically extract data of government IDs, then verify the data and cross-reference it for other use cases."





42. Upon information and belief, BlueNotary transmits the participant's verified identity data to the notary. For example, after the participant's photo ID is verified, "[t]he verification data is shown to the notary during the live session to complete the total verification process."



43. Upon information and belief, BlueNotary displays the participant's verified identity data to the notary. For example, after the participant's photo ID is verified, "[t]he verification data is shown to the notary during the live session to complete the total verification process."





44. Upon information and belief, BlueNotary transmits verified information such as the participant's name and other information extracted from the participant's photo ID to the notary's display. For example, BlueNotary provides the notary with the participant's name and address prior to joining a call. Further, BlueNotary provides the participant's full photo ID and the results of the participant's verification to the notary during the call.



Biometrics

Biometrics refers to a process that checks liveness by taking various 'selfie' angles via video using our tech partner, Persona, and comparing those images to Photo ID submitted. This is the future of identity authentication and we highly encourage using this option. This option also **does not require a SSN.**

It is up to your state as to allowing Biometrics but many states including **New Jersey, Florida, Virginia, Pennsylvania, Oregon, and Wyoming** have already moved into the future.

Photo ID

Identity verification is validated by analyzing features of a signer's photo identification. Our verification partner is able to accept **unexpired government-issued State ID card, Real ID card, Driver's License or Passport Book.**

The verification data is shown to the notary during the live session to complete the total verification process.

Notary will see this information after credential analysis is completed (along with an image of the front of the ID itself).

Questions? Chat with
● Support is online

23





45. As outlined above, BlueNotary's actions infringe the '274 patent, with knowledge of that infringement at least as late as April 22, 2025, when Trustybell's counsel first informed BlueNotary of the '274 patent and BlueNotary's practice of the patented technology of the '274 patent. The information above is exemplary and applies to all services offered by BlueNotary, including, but not limited to, RON, Digital Closing, ESIGNATURE, and IPEN.

46.     Trustybell has sustained damages as a direct and proximate result of BlueNotary's infringement of the '274 patent.

**BlueNotary's Indirect Infringement of the '274 Patent**

47.     Trustybell realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

48.     In addition to its direct infringement, BlueNotary is liable for indirect infringement of the '274 Patent under 35 U.S.C. §§ 271(b), active inducement, and 271(c), contributory infringement.

49.     The asserted claims of the '274 patent include methods for conducting a video call between a notary and at least one participant. Upon information and belief, these methods are performed by third parties and end users of BlueNotary's product and services in the course of normal and intended operation. For example, BlueNotary induces a participant to connect to a notary via a "video/audio session".

50.     Upon information and belief, BlueNotary has knowingly and intentionally actively induced infringement by actively encouraging and facilitating third parties' and end users' direct performance of each step of the patented methods.

51.     Upon information and belief, BlueNotary's acts of inducement include publishing user manuals, website descriptions, software interfaces, and tutorials that instruct users and third parties to configure and operate its RON and related services in ways that directly result in infringement of the claims of the '274 patent including: verifying the identity of the participant; sending information verifying the identity of a participant to the notary before and during the video call; allowing access to this information and the participant's photo ID

25

during the call; capturing an image of the participant to verify the participant's identity, including "selfie" angles via video; partnering with Persona to take a picture of the participant's photo ID to identify the participant based on the image in the photo ID to identify the participant based on the image in the photo ID and data present on the photo ID; verifying the participant's identity; facilitating a meeting with a notary; comparing the ID portrait to a previously captured selfie; transmitting the participant's verified identity data to a notary; displaying the participant's verified identity data to a notary, and other functionality recited in at least claims 1-2, 4, 6-9, and 11 of the '274 patent.

52.  BlueNotary had actual knowledge of the '274 patent and its relevance to the accused product as early as April 22, 2025, based on written notice provided by Trustybell's counsel. A second notice letter was sent on May 22, 2025. Despite this knowledge, BlueNotary has continued to promote and support infringing uses of its product.

53.  BlueNotary's inducement was knowing and intentional, or at minimum, in willful disregard of Trustybell's patent rights. BlueNotary knew, or was willfully blind to the fact, that its conduct would result in the infringement of the '274 Patent.

54.  BlueNotary has also contributorily infringed the '274 patent by selling and offering to sell its RON and associated services, which constitutes a material component of the patented invention.

55.  Upon information and belief BlueNotary's RON and associated services are especially made or adapted for use in practicing the patented methods. They are not staple articles or commodities of commerce suitable for substantial non-infringing use.

26

56.     BlueNotary's RON and associated services include core functionality designed specifically to perform the patented steps, including verifying the identity of the participant; sending information verifying the identity of a the participant to the notary before and during the video call; allowing access to this information and the participant's photo ID during the call; capturing an image of the participant to verify the participant's identity, including "selfie" angles via video; partnering with Persona to take a picture of the participant's photo ID to identify the participant based on the image in the photo ID to identify the participant based on the image in the photo ID and data present on the photo ID; verifying the participant's identity; facilitating a meeting with a notary; comparing the ID portrait to a previously captured selfie; transmitting the participant's verified identity data to a notary; displaying the participant's verified identity data to a notary, and other functionality described in the '274 patent, which cannot be used without infringing at least claims 1-2, 4, 6-9, and 11 of the '274 Patent.

57.     BlueNotary had knowledge of the '274 patent and that its RON and related products were especially adapted for infringing use since receiving a letters from Trustybell's counsel on April 22, 2025 and again on May 22, 2025. BlueNotary has continued to make and sell its products with this knowledge, without attempting to modify, disable, or warn against the infringing use.

58.     The information above is exemplary and applies to all services offered by BlueNotary, including, but not limited to, RON, Digital Closing, ESIGNATURE, and IPEN.

59.     As a result of BlueNotary's inducing and contributory conduct, Trustybell has suffered and continues to suffer damages and is entitled to relief under 35 U.S.C. §§ 271(b), 271(c), and

284, including a reasonable royalty and enhanced damages due to the willful nature of Defendant's infringement.

**BlueNotary's Willful Infringement of the '274 Patent**

60. BlueNotary's infringement of claims of the '274 Patent should be considered willful and deliberate entitling Trustybell to enhanced damages.

61. BlueNotary has been made aware, and has had actual knowledge, of the '274 Patent at least as late as April 22, 2025, based on Trustybell's letter.

62. BlueNotary sent a second notice letter on May 22, 2025, again identifying the '274 Patent, and inviting BlueNotary to engage in a dialogue to resolve the issue without litigation.

63. Despite receiving these notices from Trustybell, BlueNotary failed to respond and, upon information and belief, continues to manufacture, use, offer for sale, and sell the accused services without modification or any effort to avoid infringing the patent.

64. Blue Notary continues to offer its services without proper licensing from Trustybell, and BlueNotary continues to unjustly profit from Trustybell's innovation.

65. BlueNotary's lack of communication and continued infringement after receiving actual notice demonstrates an objectively high risk of infringement that was either known or so obvious that BlueNotary should have known of it.

66. BlueNotary practices, induces, and contributes to end users and third parties to practice, each and every element of at least claims 1-2, 4, 6-9, and 11 of the '274 Patent. The infringement is not speculative; it is apparent from publicly available product documentation and operation.

Accordingly, BlueNotary has no reasonable basis to continue its infringing conduct once on actual notice, and its actions are deliberate and reckless.

67. Upon information and belief, BlueNotary's conduct in this regard is egregious and constitutes willful infringement of the '274 Patent under 35 U.S.C. § 284, entitling Trustybell to enhanced damages.

## PRAYER FOR RELIEF

Wherefore, Trustybell respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.     A judgment against BlueNotary as to infringement of one or more claims the '274 Patent.

B.     That the Court preliminarily and permanently enjoin BlueNotary from making, using, selling, offering to sell, or allowing any other individual or entity to make, use, sell or offer to sell, for any purpose, the RON services that infringe one or more claims of the '274 Patent;

C.     A judgment against BlueNotary for money damages adequate to compensate Trustybell for harm sustained because of Defendant's infringement during the term of the '274 Patent, as provided by 35 U.S. Code § 286, in an amount to be determined at trial as provided under 35 U.S.C. § 284, and in no event less than a reasonable royalty;

D.     A judgment of treble damages under 35 U.S.C. §284 due to, for example, BlueNotary's willful infringement of the '274 Patent;

E.     An accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

F.   An award of pre-judgment and post-judgment interest on the damages caused by BlueNotary's infringing activities and other conduct complained of herein;

G.   A finding that this case is an exceptional case under 35 U.S.C. § 285;

H.   An award of reasonable attorneys' fees and costs incurred in connection with this action; and

I.   Any and all other relief as the Court finds just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues triable of right by a jury.

Dated:  July 29, 2025

Respectfully submitted,

*/s/ Eugene E. Murphy, Jr.  (ARDC # 6198863)*
Murphy Law Group, LLC (Local Counsel)
161 N. Clark St.
Suite 2550
Chicago, IL 60601
P:(312) 202-3202
F: (312) 202-3201
gmurphy@murphylitigation.com

***(Pro Hac Vice Pending)***
Anand Sharma
Parmanand.Sharma@finnegan.com
Malcolm T. Meeks
Malcolm.Meeks@finnegan.com
Finnegan, Henderson, Farabow, Garrett &
Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
+1 202 408 4215
***(Pro Hac Vice Pending)***
Hani Salameh
Hani.Salameh@finnegan.com
Finnegan, Henderson, Farabow, Garrett &
Dunner, LLP
3300 Hillview Avenue
Palo Alto, CA 94304-1203
+1 650 441 9300


***Attorneys for Plaintiff***
TrustyBell, GMBH

4927-0535-4329, v. 1