IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRUSTYBELL, GMBH AND SCHEAN,
GMBH,

                     Plaintiffs,

        v.

BLUENOTARY, LLC,

                    Defendant.

Case No. 25 cv 8871

Honorable Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiffs Trustybell, GmbH (Trustybell) and Schean, GmbH (Schean) sue Defendant BlueNotary, LLC (BlueNotary) for its unauthorized use of U.S. Patent No. 11,582,274 (the '274 Patent). The '274 Patent relates to a method of verifying the identity of a video conference participant before initiating the call. Trustybell claims that BlueNotary has infringed its patent through its use of its own, similar verification platform. Presently before the Court is BlueNotary's motion to dismiss the First Amended Complaint, which claims that the '274 Patent covers only an abstract idea that does not involve any inventive concept, but identifies merely a process of obtaining an individual's identity and relaying that verification to another. For the reasons stated below, the motion to dismiss [30] is granted.

### Background

Trustybell was formed in 2020 during the COVID-19 pandemic to address the growing need to facilitate remote identity authentication for video conferences. [25] ¶ 10. The '274 Patent involves a method for the verification of a participant's identity during remote communication. *Id.* ¶ 17. Plaintiffs allege that before the Trustybell App, virtual communications were "insecure due

to the lack of verification and security measures in place. Participants were forced to rely on their own senses to determine whether another participant was who they claimed to be." *Id.* ¶ 23. Claim 1 of the '274 Patent, which is representative of the other challenged claims for this motion, provides:

> 1. A method of conducting a video or telephone call between at least two participants, the method comprising:
> verifying the identity of a first participant; and
> after successful verification of the identity of the first participant, providing information indicating the verified identity of the first participant to a second participant before and during the video or telephone call;
> wherein said step of verifying the identity of the first participant comprises:
> capturing a face image of the first participant, as a first image;
> capturing an image of an official document identifying the first participant, as a second image, the official document including a face image of the first participant together with further data identifying the first participant, wherein the two images are captured immediately before the setup of the video or telephone call; and
> verifying the identity at least by comparing the first image with the face image included in the second image, by means of technical image analysis, and
> wherein said step of providing information comprises:
> generating a signal including verified data identifying the first participant on the basis of data extracted from the second image;
> transmitting said signal to the site of the second participant; and
> displaying said verified data identifying the first participant on a terminal device of the second participant used for conducting the video or telephone call,
> wherein said verified data included in said signal transmitted to the second participant and displayed on the display of the terminal equipment of the second participant includes the name of the first participant and further information that has been extracted from the official document.

Plaintiffs allege that BlueNotary is infringing on the '274 Patent by providing a service that has "a verification process that includes verifying a participant's identity via a biometric comparison with the participant's valid photo ID." *Id.* ¶ 30. Specifically, Plaintiffs allege "BlueNotary captures a photo of the participant's photo ID, then captures a photo of the participant to compare the image on the photo ID to the image of the participant. Based on this comparison and before connecting the participant with the notary, BlueNotary sends a signal to the notary

indicating the results of the comparison of the two photos." *Id.* According to Plaintiffs, BlueNotary has been infringing on the '274 Patent since at least 2022. *Id.* ¶ 33.

## Legal Standard

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Mgmt. Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). At the same time, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## Discussion

BlueNotary seeks to dismiss the First Amended Complaint because the '274 Patent only covers the abstract and patent-ineligible idea of verifying an individual's identity and relaying that

verification to another. BlueNotary also argues that the '274 Patent offers no inventive concept to provide an exception from the ineligibility of an abstract subject matter.

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Still, under the exclusionary principle, the Supreme Court has held claims regarding "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). That said, "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* at 217. In *Alice* and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 77–78 (2012), the Supreme Court instructed courts to follow a sequential two-step analysis to determine whether a patent is barred by the exclusionary principle: (1) the court must initially "determine whether the claims at issue are directed to one of those patent-ineligible concepts"; and (2) then, the court must search for an "inventive concept" by reviewing whether the claim limitations analyzed individually and as an ordered combination transform the claims into a patent-eligible application. *Alice*, 573 U.S. at 217–18.

Patent eligibility can be determined at the Rule 12(b)(6) stage when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). While the ultimate determination of eligibility under Section 101 is a question of law, that determination turns on whether the claim elements or the claimed combinations are well-understood, routine, and conventional in the industry, which is a question of fact. *Id.* at 1128. The Federal Circuit has held that patentees who adequately allege their claims contain inventive concepts sufficient to

"transform" the claimed abstract idea into a patent-eligible application survive a Section 101 eligibility analysis under Rule 12(b)(6). *Id.* at 1126–27.

## I.     *Alice* Step One

The Supreme Court has not established a definitive rule to determine what constitutes an "abstract idea" under the *Alice* test. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Rather, it is sufficient to compare the "claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* The "directed to" inquiry is "based on whether 'their character as a whole is directed to excluded subject matter.'" *Id.* at 1335 (*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). An abstract idea includes claims that can be understood as "adding conventional computer components to well-known business practices." *Id.* at 1338.

"For software-based inventions, *Alice/Mayo* step one 'often turns on whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1352 (Fed. Cir.), *cert. denied*, 145 S. Ct. 593 (2024) (quoting *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (cleaned up)). "The abstract idea exception prevents patenting a result where it matters not by what process or machinery the result is accomplished." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1311–12 (Fed. Cir. 2016) (internal quotations omitted). Courts "therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* at 1314. But in doing so, courts "must avoid describing the claims at a high level of abstraction, divorced from the claim language itself." *Contour IP Holding LLC v. GoPro, Inc.*,

113 F.4th 1373, 1379 (Fed. Cir. 2024). That said, an "improved result, without more, is not enough to support patent eligibility at *Alice* step one." *Id.*

BlueNotary argues that Plaintiffs' patent is targeted at the abstract ideas of capturing, comparing, generating, transmitting, and displaying information, which courts have previously found to be abstract ideas. Federal Circuit precedent contains ample examples of what constitutes an abstract idea. As an example, in *Two-Way Media*, the claims recited a method of transmitting packets of information over a communications network comprising of converting information into streams of digital packets, routing the streams to users, controlling the routing, and monitoring the reception of packets by the users. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1334–35 (Fed. Cir. 2017). While Two-Way Media argued that the claims solved data transmission problems, including load management and bottlenecking, the claimed method was not directed to those improvements. *Id.* at 1336–38. Thus, the Federal Circuit held that the claims were ineligible because they merely recited a series of functional results—"converting," "routing," "controlling," "monitoring," and "accumulating records,"—but did not sufficiently describe how to achieve those results in a non-abstract way. *Id.* at 1337. Similarly, in *Electric Power*, the challenged claims were directed to systems and methods for achieving real-time performance monitoring of an electric power grid. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016). The Federal Circuit held that the patent was an abstract idea because it merely described the "process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* at 1354. Likewise, in *In re Killian*, the Federal Circuit found that claims directed at collecting information, comprehending the meaning of that collected information, and indicating

6

the results were abstract ideas that were patent-ineligible under *Alice*. 45 F.4th 1373, 1380 (Fed. Cir. 2022).

In contrast, the Federal Circuit finds that patents are eligible under *Alice* step one when they can provide a specific means or method that improves the relevant technology, with reference to the specific process or machinery for achieving those results. For example, in *Contour IP Holding LLC v. GoPro, Inc.*, the claim recited "an improved POV camera through its combination of claim limitations and requirement that the claimed POV camera processor be configured to record low-and high-quality data streams in parallel, followed by the low-quality data stream's wireless transfer to a remote device." 113 F.4th 1373, 1379 (Fed. Cir. 2024). This would allow a user to remotely view and adjust the recording in real time. *Id.* Importantly, the claim required "specific, technological means" which resulted in a technological improvement, but did not cover other ways that a camera processor might generate multiple video streams. *Id.* The Federal Circuit held that this claim was directed to a patent-eligible subject matter. *Id.* at 1381. Similarly, the claim in *SRI*, involved "network monitors to detect suspicious network activity based on analysis of network traffic data, generating reports of that suspicious activity, and integrating those reports using hierarchical monitors." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019). The Federal Circuit found that this claim was not directed to just analyzing data, but improving the computer network technology because the "claims are directed to a technological solution to a technological problem." *Id.*

As exemplified by these cases, the difference is whether the claims are directed to using the computer as a tool (i.e., automating a conventional idea) or improving the technical functioning of the computer. *Id.* at 1304. Here, nothing in Plaintiffs' claims is directed at improving the technical functioning of a computer or a computer network. Instead, the focus is on automating

7

the process of verifying who the participants are in a remote meeting. Plaintiffs' claims include the functional steps of "verifying the identity" of a participant through "capturing" images of the participant's face and official ID and "comparing" those images. Followed by "generating" and "transmitting" a signal that includes the verified data to the other participant. Those are abstract ideas. As in *Two-Way Media*, *Electric Power*, and *Killian*, the collecting of information, processing of that information, and then displaying the results are abstract ideas that are patent-ineligible under *Alice*. "[T]he combination of two abstract ideas does not render an abstract idea less abstract." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025).

BlueNotary also argues that Claim 1 recites the automation of a function performed by a human. "A telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023) (cleaned up). The Federal Circuit has found that claims focused on "collecting information, analyzing it, and displaying certain results" fall within this category. *Id.* at 1362. The Federal Circuit is clear that computer-based claims that merely assist "in processing information more quickly" are still directed to a patent-ineligible abstract idea because they do not "improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019). A human can look at a person and compare them to the photo on their ID and send a confirmation of that verification. So the fact that a computer can process and transmit that information faster does not transform the claim into a patent-eligible improvement. The described conduct is still directed to the mental process of verifying an individual's identity. Thus, Plaintiffs' claim is directed to an abstract idea and is patent-ineligible under *Alice*.

8

## II.    *Alice* Step Two

At step two of the *Alice* framework courts must "consider the elements of [the] claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 79, 78). The "transformation into a patent-eligible application requires more than simply stating the abstract idea while adding the words apply it." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72) (cleaned up). To save a patent at step two, the claim must include "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72–73 (cleaned up)).

BlueNotary argues that Plaintiffs do not explain how the functions are performed and that the generic language used in the complaint cannot form the basis of an inventive concept. Plaintiffs respond that their inventive concept is the ordered combination of actions, which is intended to address identity verification in a remote environment. According to Plaintiffs, the claims do not assert result-oriented functions, but set forth a process for the secure transmission and display of identity verification data.

The Federal Circuit has found that non-conventional and non-generic arrangements of otherwise conventional claims can satisfy the second *Alice* step. In *DDR*, the Federal Circuit held that the claims directed to a system for generating a hybrid web page that maintained the "look and feel" of a host website were patent eligible, because they overcame "a problem specifically arising in the realm of computer networks," and the claimed invention changed the normal operation of the computer network itself and was "necessarily rooted in computer technology." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–59 (Fed. Cir. 2014). The claims specifically addressed how interactions with the internet were manipulated to yield the desired

result. *Id.* at 1258. The court also found that the claims did not preempt every application of the idea and were limited to a specific fact pattern, thus allowing them to be patent eligible. *Id.* at 1259. Similarly, in *Bascom*, the patent was for the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–52 (Fed. Cir. 2016). The Federal Circuit found that the inventive concept was "the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350. The court clarified that reciting the abstract idea of filtering content with the requirement that it be done on the internet or through generic computer components was not an inventive concept, but that this "patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." *Id.*

However, courts reject arguments that the ordered combination of actions transforms claims when the claims are conventionally ordered. In *Trinity Info Media*, Trinity made similar arguments to the ones raised by Plaintiffs—that its asserted claims were not well-understood, routine, and conventional. *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1365 (Fed. Cir. 2023). Trinity alleged that its patent improved on the prior art by having features "including (1) real-time matching based on progressive polling, (2) using match servers and a match aggregator, (3) using a mobile device, (4) displaying matches reviewable by swiping, and (5) using a mobile application." *Id.* at 1366. The Federal Circuit found that these allegations were conclusory and there was nothing inventive about the ordered combination as "the asserted claims are organized in an expected way—receiving user information, asking that user questions, receiving answers, identifying and displaying a match based on those answers." *Id.* Likewise, in *Two-Way Media*, the Federal Circuit found the patent claims relating to a system for streaming audio/visual

10

data over a communications system, like the internet, were invalid. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017). As the court found, nothing in the "claims or their constructions, including the use of 'intermediate computers,' requires anything other than conventional computer and network components operating according to their ordinary functions." *Id.* at 1339 (citing *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319–21 (Fed. Cir. 2016)). The court also found that the claims used "a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result." *Id.*

There is nothing inventive about the ordered components of Plaintiffs' claims. Plaintiffs' claims are an arrangement of known, conventional pieces in a conventional order—collecting the data, analyzing the data, transmitting the data, and then displaying the data. This is the standard order in which these components would occur. Unlike in *DDR* and *Bascom*, Plaintiffs' claims do not alter the generic arrangement of how the process would normally occur. Instead, like in *Trinity* and *Two-Way Media*, Plaintiffs' asserted claims are ordered in the expected way. To verify someone's identity, the conventional process would be to compare the official ID with the person and then confirm that they are the same. Plaintiffs merely automated that process.

Moreover, the First Amended Complaint fails to allege in a nonconclusory manner limitations in the claims that prevent the patent from preempting all ways of verifying identity on the internet. A preemption concern "arises when the claims are not directed to a specific invention and instead improperly monopolize 'the basic tools of scientific and technological work.'" *McRO*, 837 F.3d at 1314 (quoting *Alice*, 573 U.S. at 216). "When a claim 'abstractly cover[s] results' without regard to a specific process or machinery for achieving those results, it creates preemption

concerns because it 'would prohibit all other persons from making the same thing by any means whatsoever.'" *Contour*, 113 F.4th at 1379 (quoting *McRO*, 837 F.3d at 1314).

Plaintiffs argue that their claims do not preempt all forms of identity verification because they require the interaction of specific hardware and software components that must be performed in a particular order. [34] at 12. But a review of the specifications reveals no such limiting principles. In the detailed description of the patent, Plaintiffs describe the second step in their process as: "Extracting of data from the second image may be performed by any method a skilled person is aware of or will become aware of in the future, including but not limited to optical character recognition (OCR) for extracting information from text or image extraction and analysis applied to the image of the person included in the official document." [25] at 44. But this specification explicitly does not limit the method of data extraction to a specific technology. The description also includes that "[i]t is emphasized that the exact contents and sequence of the method steps is given here by way of illustrative example only and the present invention is not limited thereto" which contradicts the Plaintiff's argument that their claims are limited to the specific sequence of steps. *Id.* Further, while the description requires the verification of "certain biometric data such as shape of and distances between predetermined features of the human face are extracted from the images and compared between the images[,]" the method for *how* this is accomplished is noted as being "omitted" as the "[r]espective procedures of technical image analysis are well known to a skilled person[.]" *Id.* at 45. By omitting how the process is accomplished, Plaintiffs fail to establish a limitation that stops their patent from preempting all forms of identity verification.

These claims and specifications are like those in *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). In *Electric Power*, the claims were for a method of detecting events

on an interconnected power grid with steps reciting the receipt of data from various sources, interpretation of that data, and display of the results. *Id.* at 1355–56. The Federal Circuit found that the claims did not require a new source or type of information, or new techniques for analyzing it, nor did they require an inventive set of components, methods, or programming. *Id.* at 1355. Instead, it only required the selection and manipulation of information. *Id.* Therefore, the question turned on *how* the desired result was achieved. But since the claim specifications only required "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information. . . . such invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Id.* (quoting *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353, 1355 (Fed. Cir. 2014)). As in *Electric Power*, nothing in the claim specifications requires anything beyond using readily available technologies and methods in their traditional manner. Plaintiffs' patent does nothing more than outline the abstract idea of identity verification by comparing an image of a person to that of their ID in the traditional manner using computer networks and equipment. The patent itself either relies on preexisting technology or omits *how* the steps detailed in the claims are accomplished. Nor does the patent limit its claims to specific hardware or software, to prevent it from preempting all remote identity verification. Therefore, Plaintiffs' claims are insufficient to pass the inventive concept test. Accordingly, Plaintiffs' claims fail to meet the standard for patent eligibility under Section 101.

## Conclusion

For the above reasons, BlueNotary's motion to dismiss [30] is granted. Plaintiffs may refile an amended complaint if they can cure the deficiencies and such an amendment is consistent with their obligations under Federal Rule of Civil Procedure 11. *Runnion ex rel. Runnion v. Girl Scouts*

13

*of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). If Plaintiffs do not file an amended complaint by April 2, 2026, then the dismissal will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated:  March 12, 2026

Sunil R. Harjani
United States District Judge